## COMPANIA DE NAVEGACION TRANSMAR, S. A., v. GEORGIA HARDWOOD LUMBER CO.

### THE KOTOR.

#### No. 4.

District Court, S. D. Georgia, Augusta Division.

Dec. 5, 1942.

Dow & McAllister, of New York City, and Cumming, Harper & Nixon, of Augusta, Ga., for libellant.

Carpenter & Stevenson, of New York City, and Hull, Barrett, Willingham & Towill, of Augusta, Ga., for respondent.

LOVETT, District Judge.

This is a suit in admiralty.

Claiming that the respondent furnished a cargo heavier than specified in the freight contract, the owner-operator of the ship has sued for freight moneys in excess of the amount paid without prejudice. Issue is joined as to the weight of the cargo.

The contract was for a shipment of 750,-000 board feet pine timbers "not exceeding 4 pounds per board foot at $70.00 per 1000 board feet on and/or under deck ship's option" from Jacksonville, Florida to Alexandria, Egypt.

The cargo consisted chiefly of "water-seasoned" sawed pine timbers varying from 6x6 inches to 10x10 inches and from 16 to 40 feet in length. As distinguished from "air-dried" timbers, they were seasoned by storage in water for periods running from several months to a year. These timbers were shipped to Jacksonville via railroad from various points in Florida, Alabama and Mississippi. They were loaded on flat cars at the points of origin and stacked with tiers of separation strips between them; and the butts, because of their random lengths, were spaced apart. The loading on these cars was on different dates, largely between November 15th and 21st, 1940. The cars moved approximately 400 miles by rail before reaching Jacksonville and were unloaded directly from the railroad cars on the dock into the ship. An average period of about two weeks elapsed from the loading on the railroad cars to the loading on the ship. The bills of lading issued by the railroad showed that the average weight of the timbers at or near the interior from where shipped was approximately $4\frac{3}{4}$ pounds per board foot. These facts coming to the knowledge of the ship, upon arrival in Jacksonville, and while the cars were still in the railroad yards, a controversy arose between the ship and a representative of the respondent concerning the true weight of the timbers at that time. The ship suggested that sample cars be weighed. The respondent objected but agreed that all of the cars might be weighed. The timbers were not re-weighed at shipside or elsewhere. The ship arrived at Jacksonville on November 26, began loading the next day, and sailed on December 4, 1940.

The questions are: First, did the timbers weigh more than 4 pounds per board foot when loaded on the ship, and, secondly, if they did, what are the consequences.

The libelant insists that as the timbers weighed more than 4 pounds per board foot when loaded on the railroad cars, in view of the weather and other conditions it should be assumed they weighed as much when received into the ship, invoking the doctrine that a condition once established is presumed to continue for a reasonable length of time unless altered by an intervening force or circumstance. The respondent replies that the doctrine is inapplicable to

an article like wet timbers, and contends the proof shows the timbers while being transported by railroad or in the yards would have dried out sufficiently to bring them within the weight stipulated in the contract; and says further libelant has failed to prove any damages even if it can be assumed the timbers were over-weight.

▮ There is no direct evidence as to the weight of the shipment at ship-side or on board the vessel. Much testimony has been heard from many witnesses, who differ among themselves, as to the amount of moisture that would have evaporated between the time the timbers were weighed and arrival at ship-side, some giving expert opinion that three-fourths of a pound per board foot would be lost and others believing less.[1] The number of board feet of the timbers is known and not in dispute. The freight was paid at the rate specified according to the board foot measurement.

▮ The first question that arises, therefore, is where the burden of proof lies in a case of this kind. Having alleged in the libel that the weight of the timbers exceeded the maximum stipulated in the contract, holding the affirmative of that issue, it would seem that the onus at the beginning of the trial was on the libelant. If neither party had offered evidence the libelant would have been compelled to submit to an adverse judgment on the pleadings.[2] But it was shown that the weight exceeded the stipulated maximum when the timbers were loaded on the railroad cars. Is this sufficient to create a presumption that the weight was excessive when the timbers were loaded on the ship, thus shifting the burden of proof?[3] I think not. The rule that a state once shown is presumed to continue is not without qualification and is not to be rigidly applied under all circumstances. Where likelihood of change is inherent in the thing itself, i.e., lumber or timbers, green or wet, exposed to the sun and air, whereby it dries and moisture evaporates, the inference of continuance does not arise. The more volatile the situation the less reliable is the presumption of the continuous state.[4] Blocks of ice and blocks of granite weighing the same when the sun shines on them hot do not last equally as long.

The libelant has failed to establish by a preponderance of the evidence that the shipment was over-weight when received on the ship.

▮ It must be admitted that the weight on board ship and not the weight on board the railroad cars, if they differ, should control the rights of the parties here.[5] Libelant had ample opportunity to weigh the timbers at Jacksonville before they reached ship-side. They were on cars in the railroad yards there. It would have been a simple matter, accompanied with little expense, to weigh them car by car (there were 52) on the railroad track scales. The respondent was willing for this to be done, though its representative objected to weighing sample cars only, saying they would not be representative. There was sufficient time before sailing after the ship arrived for this to be done. The ship declined. "In the absence of any custom to govern the matter, the person who wants to ascertain the quantity must incur the trouble and expense of weighing".[6] Or the ship's draft marks could have been used before and after loading as a scale for determining the weight at least with some

---

[1] It may be assumed that if parties to a contract express the freight rate with a guaranteed maximum weight per freight unit, or with a guaranteed minimum weight per cubic content, the shipper must pay for the excess weight in the one case or deficiency in the other, if the ship loses cargo space in either case. North & South Shipping Co. v. Cargo of Pine Boards, 1926 A.M.C. 839; Barber Steamship Lines v. N. P. Sloan Co., 2 Cir., 274 F. 365.

[2] See 31 C.J.S., Evidence, § 104; 20 Am.Jur., Evidence, Sec. 135.

[3] The burden of proof is here used in the secondary sense to designate an obligation to meet with evidence a prima facie case created against a party, sometimes called "burden of evidence". Mobley v. Lyon, 134 Ga. 125, 128, 129, 67

S.E. 668, 19 Ann.Cas. 1004, 137 Am.St. Rep. 213.

[4] Jensen v. Logan City, 89 Utah 347, 57 P.2d 708, 718; Cleveland, C. C. & St. L. R. Co. v. Starks, 58 Ind. 341, 106 N.E. 646, 651; D. S. Cage & Co. v. Amsler, Tex.Civ.App., 217 S.W. 1094; Hawkins v. Byrn, 150 Tenn. 1, 261 S. W. 980; Bludworth v. Bray, 59 Fla. 437, 52 So. 957; Lehigh, etc., Co. v. Trotter, 42 N.J.Eq. 661, 9 A. 694; Wigmore on Evidence (3d Ed.), Vol. 2, Sec. 437; 55 C.J., Sales, § 387; 22 Am. & Eng. Enc. L., p. 1239.

[5] Christie v. Davis Coal & Coke Co., D.C., 95 F. 837(1), 838, 839.

[6] Per Willes, J., in Coulthurst v. Sweet, L. R. 1 C.P. 649; Scrutton on Charter Parties, 14th Ed., p. 419, note (p).

approximation. If so used, the result has not been shown.

■ The suggestion is made that the Carriage of Goods by Sea Act [7] forecloses respondent from disputing the weights shown by the ocean bill of lading. While such lading is prima facie evidence of the receipt of the goods as described, including the weight, the trouble here is I do not know that they recited any weights. The copies of the bills of lading were offered in evidence by the libelant without formal proof that they were true copies. The respondent objected to their being received because in the copies it held, furnished by the ship's agent, no weights appeared. The original bills of lading were not produced. Being order bills presumably they were surrendered to the ship at the port of discharge. There is some indication in the evidence that the weight was inserted in kilos and not in pounds, for the purpose of calculating Suez Canal tolls, but when or by whom the weights may have been written and whether before or after the bills were turned over to the shipper, I do not know. Respondent's representative at Jacksonville could not remember, but the fact that the copies furnished him by the ship's agent contained no weights gives some support to the view that they must have been written into the ladings during the course of the voyage and were not in the originals when respondent received them and turned them over to the bank along with the other documents necessary for the collection of the price of the timbers sold. The copies of the bills of lading offered in evidence were finally admitted in evidence with the weights deleted by agreement of the parties.

Respondent also urges that even if a breach of warranty as to the weight of the timbers can be assumed libelant can not recover, as there was no proof that any cargo was shut out or that any freights were lost, inasmuch as this action is not for "dead freight" but is only for additional moneys in excess of the amount paid.

In view of my conclusions that overweight has not been established by a preponderance of the evidence, it seems unnecessary to pass on this last question.[8]

---

[7] 46 U.S.C.A. § 1303(4), (3) (b).

[8] See, however, Excelsior Coal Co. v. Gildersleeve, 2 Cir., 160 F. 47; Barnett v. Luthur, 2 Fed.Cas. page 879, No. 1,025; Herbst v. The Asiatic Prince, D.C., 97 F. 343; Munson v. Straits of Dover S. S. Co., 2 Cir., 102 F. 926; In re California Nav. & Imp. Co., D.C., 110 F. 670, 677; North & South Shipping Co. and Barber Steamship Lines cases, cited supra in footnote 1.