William F. Sherman, a Minor, by Robert Lee Sherman, His Father and Next Friend, and Robert Lee Sherman, Plaintiffs-Appellants, v. City of Springfield, Illinois, a Municipal Corporation, Defendant-Appellee.

**Gen. No. 10, 749.**

Fourth District.

December 6, 1966.

Rehearing denied January 3, 1967.

Londrigan & Londrigan, of Springfield (Joseph A. Londrigan, of counsel), and Robert Weiner, of Springfield, for appellants.

Giffin, Winning, Lindner & Newkirk, of Springfield (Alfred F. Newkirk and Robert S. Cohen, of counsel), and I. J. Feuer, of Springfield, for appellee.

GOLDENHERSH, P. J.

Plaintiffs appeal from the judgment of the Circuit Court of Sangamon County, entered upon a jury verdict finding in favor of defendant, in plaintiffs' suit for personal injuries and medical expenses.

Plaintiff, William F. Sherman, a minor, sues to recover damages for personal injuries suffered on June 26, 1964,

while swimming in Lake Springfield, a lake owned and maintained by defendant, City of Springfield. Plaintiff, Robert Lee Sherman, is William's father, and sues to recover for medical expenses incurred by reason of William's injuries.

Plaintiffs complain of numerous errors committed during the trial. The alleged errors, and the evidence adduced by the parties, will be reviewed and discussed to the extent necessary to this opinion.

The evidence shows that the defendant owns a lake known as Lake Springfield. There is a beach and swimming area which is open to the public between Memorial Day and Labor Day. A fee is charged for admission to the beach area. On the east bank of this part of the lake, there is a sanded beach, where the defendant has constructed a beach house. The swimming area is separated from the rest of the lake by a bulkhead made of sheet steel pilings, which lies to the west of the beach. There are lifeguard stations on the sand beach, on a platform on the bulkhead, and near a safety rope which extends north and south through the swimming area.

When the lake and beach area were completed in 1935, a pipe was installed through which water could be pumped into the swimming area. This was used for a dual purpose, to maintain a proper level of water, and to chlorinate the water.

In January and February of 1964, employees of defendant pumped the water out of the swimming area, removed the old pipe, and installed a new one. The new pipe extended from a pump and chemical treatment room located on the south side of the lake, northwardly, for a distance of approximately 338 feet, and was constructed of pipe ranging from 8 inches to 3 inches in diameter. The pipe lengths were connected by means of mechanical joints, using gaskets, but no washers. The reduction connections were made with reducers. The 8-inch pipe

was at the southerly end of the beach and the smallest pipe was at the north end. There are approximately 150 one-half inch holes drilled into the pipe, spaced 16 to 18 inches apart. Lee Nickelson, Chief Utilities Engineer for defendant, testified that the holes are needed in order to distribute the water and chlorine into the swimming area. The water and chlorine are pumped through the pipe by means of an impeller pump designed to pump 1,400,000 gallons per day.

Plaintiffs' complaint charged 9 acts of negligence, all but one of which were stricken by the court at the close of the plaintiffs' case. The charge of negligence upon which the case was submitted to the jury was that defendant "carelessly and negligently failed to install said pipe at sufficient depth to be safe for swimmers using said beach."

On June 26, 1964, plaintiff, William F. Sherman, then 17 years of age, was visiting his grandparents in Springfield. He and his brother, Robert, age 15, went to the beach, paid the admission fee, changed to swimming trunks, and entered the water. They walked out to a safety rope which extends in a northerly and southerly direction, in an area where the water is approximately 3 feet deep. They swam in deeper water, plaintiff dived off the diving tower one time, after which the boys returned to the beach, stayed there awhile, and then decided to run into the shallow water as far as they could. After doing this several times, they decided to run out and dive into the water. Plaintiff dove at a point where he estimates the water to be about 3 feet deep. When he dove, his arms were extended above his head, and his head was "straight with his body." His head hit something hard and solid, and he suffered injuries resulting in his being almost completely paralyzed.

James McKee, defendant's employee, called by plaintiffs under section 60 of the Civil Practice Act, testified that he was in charge of the job when the new pipe was

200

installed. The old pipe was removed with a backhoe. At the south end of the beach the pipe was laid in a ditch 3 feet deep, and as it moved northwardly it was shallower, ranging as low as 12 to 14 inches. Despite the pumping there was some water in the area and they were "in the blind somewhat," and were unable to tell the exact depth of the ditch. The bottom of the ditch in which the pipe was laid was clay and mud, with an "inch or two of rock and gravel," and as they dug the ditch, the sides of the sand would fall into the ditch.

Anthony Stockus, superintendent of parks and recreation for the defendant, called under section 60, testified that after the pipe was laid, a crew of men working under his supervision, covered the pipe, tamped the gravel to a depth of 4 to 8 inches, and then placed 4 to 6 inches of sand over the gravel. The pump was turned up and the water came up through the sand and gravel like boiling water. He next checked the cover over the pipe in the middle of May. He made this check, barefoot and wearing swimming trunks, by walking the pipe from north to south, and found the pipe to be working properly. He made no check of the depth of the cover.

Plaintiffs' first complaint of error arises out of a ruling of the court during the testimony of Carter Jenkins, called by plaintiffs as an expert witness. Mr. Jenkins testified that he is a consulting engineer, with many years of experience in the fields of hydraulics, municipal improvements, water systems and recreational facilities. He identified an exhibit described as a topographic map plotted from a survey, to show the beach area, the elevations of the earth surface, the pool level, beach house, diving platform, and various other objects. The survey was made between August 17 and 21, 1964, and on September 1, 1964, at all of which times the beach was in operation. On each of the days on which the survey party worked, the pipe appeared to be functioning, and the water level appeared to be normal. The pipe was located

by means of probing rods, and Mr. Jenkins stated that the pipe lay between the beach and the safety rope. The pipe is situated approximately 50 to 75 feet from the water's edge, the distance varying with the curve of the shoreline of the beach, and the ¾-inch safety rope is located approximately 15 feet west of the pipe. The water is approximately 3 feet deep, with minor variations, both where the pipe is laid, and the rope installed. Mr. Jenkins described the manner in which the survey was made, and identified another exhibit, described as a drawing, showing the types and sizes of the pipe and reducers used in the lake installation.

Plaintiffs' counsel then asked this question: "Now Mr. Jenkins, I wish to ask you, from your observation of the particular installation, do you have an opinion based upon your experience as to whether this was a proper installation?" Defendant's objection thereto on the ground that "they have not stated all of the elements which are involved in the evidence up to now, as to the installation," was first overruled, and after argument of counsel, sustained. Plaintiffs then propounded a lengthy, detailed hypothetical question, concluding: "Now, Mr. Jenkins, do you have an opinion based on reasonable engineering principles and certainty as to whether the top of the chlorinating pipe installation or construction was at a sufficient depth below the surface of the lake bottom in this pool to prevent its movement or changes in the sand cover? Do you have an opinion?"

In reply, Mr. Jenkins stated that he had an opinion, and expressed the opinion as follows: "My opinion is that the cover is entirely insufficient over the top of the pipe and that the pipe, therefore, could move and that the cover could be moved, also." In explanation of his answer, he stated that the facts hypothesized would result in movement of the pipe, movement of the sand on top of and on the side of the pipe, and the action of the water, through the holes in the pipe, would move the

202

sand and gravel, causing removal of the fill over the top of the cast-iron pipe.

Plaintiffs contend that the court erred in refusing to permit the witness to express his opinion, based upon his personal knowledge and observation, and requiring that the opinion be given in response to a hypothetical question. Plaintiffs argue that the court's ruling weakened the effect of the witness' opinion, to plaintiffs' prejudice. Defendant contends the court did not err, that in fact, plaintiffs' case was strengthened thereby, since it presented plaintiffs' counsel with an opportunity to repeat and emphasize the evidence favorable to them.

In Volume II, Wigmore on Evidence, (3rd edition), in sections 673 through 679, is found a discussion of the question here presented. The conclusion reached is that if an expert witness has knowledge based upon personal observation, no hypothetical presentation is necessary. In Louisville, N. A. & C. Ry. Co. v. Shires, 108 Ill 617, at page 630, the Supreme Court said: "A medical expert may examine the patient, and from such personal examination give his opinion to the jury. If the medical expert has not made a personal examination of the patient, then the proper practice is to put a question to the witness reciting the supposed facts hypothetically, upon which the opinion of the expert is wanted." In Krueger v. Friel, 330 Ill App 557, at page 567, 71 NE2d 815, the Appellate Court for the First District said: "The answer sought was one not within the common knowledge of the layman. It was peculiarly within the knowledge of a person with special skill or training. The witness was familiar with the street car and testified from his personal knowledge. When an expert witness has personal knowledge or has personal observation and his opinion is sought, a hypothetical presentation is unnecessary, but he may be examined as an expert upon direct interrogation."

▮ It appears, therefore, that Illinois has followed the rule enunciated in Wigmore, and the trial court erred

in not permitting the witness to testify as to his opinion based upon his personal observation.

The alleged failure to consider all of the elements "involved in the evidence" does not affect the admissibility of the expert witness' opinion based on personal observation. Any evidence which it is contended was not considered, and the effect of its consideration upon the opinion expressed, are subjects for cross-examination.

Plaintiffs contend that the trial court improperly instructed the jury that certain testimony of Mr. Jenkins, Herbert R. Williams, Cindy Campbell, Abigail Clauter and Robert L. Sherman could not be considered as any evidence of the conditions and circumstances in existence on the date on which the minor plaintiff was injured.

Following the expression of his opinion, plaintiffs' counsel inquired of the expert witness, Carter Jenkins, whether the survey which he prepared, in any manner modified or altered his opinion. The witness stated that the survey confirmed his opinion that there was a movement of the pipe, the sand fill, and the sand to the side of the pipe. He was then asked what he found when he made the survey. Defendant's attorneys objected, and after considerable colloquy between counsel, and some discussion between counsel and the court, the court stated to the jury: "Ladies and gentlemen of the jury, I'm overruling this objection, and the evidence you're about to receive you can take only in this limited sense: The testimony that you will receive at this point, I'm advising, you are not to consider as to what the condition was on June 26th, 1964, which was the day of the injury to the plaintiff, but may be received only by you in conjunction with the testimony of this witness. Do you follow me?

"In other words, you are limited on this. You can only consider this testimony in connection or in conjunction with this witness's testimony, his line of testimony, but

204

you are not to consider this testimony as to what the conditions on the beach were on June 26th, 1964."

Mr. Jenkins then testified that on August 18, 1964, there was no cover over the flange of the 6-inch by 4-inch reducer, and on September 1, 1964, there were 5 inches of sand cover. He stated that in his opinion the change in cover was due to the movement of the pipe joints, and that there was movement of the sand due to the currents of the water in the swimming area. He fixed the location of the reducer as being 55 feet west of the water's edge, 15½ feet from the safety rope, and approximately 1.2 feet north of the south door of the beach house. He stated that on September 1, 1964, the pipe was exposed in two places, lying south of the point where the reducer is located.

Herbert R. Williams, called by plaintiffs, testified that he was chief of the survey party which made the survey under the direction of Carter Jenkins. On objection to Williams' testimony on the grounds that it should be limited to and considered in conjunction with Jenkins' testimony, the court instructed the jury as follows: "Ladies and gentlemen of the jury, this witness—Mr. Williams' testimony is to be considered by you and is limited by court instruction to be considered by you in the light of the testimony of Mr. Carter Jenkins, and you are not to consider any of his testimony as a fact of anything that occurred or was present at the place in question on June 26th, 1964."

Following this admonition to the jury, Williams testified to locating the reducer previously described by Jenkins, and stated that on August 18th the sand cover in this area was not more than one-eighth or one-quarter inch thick. At another point along the pipe he stepped into a very large hole, and there was an exposure of pipe at this point.

Cindy Campbell called by plaintiffs, testified about stepping on a pipe, and a "bigger pipe," and fixed the

time as the early part of July. The court instructed the jury as follows: "Ladies and gentlemen of the jury, you may consider this evidence with this limitation: That it can only be considered in light of the testimony given by Mr. Carter Jenkins. You may not consider it as any evidence as to what the condition was or the circumstances were at that time or at that place on June 26th, 1964. You may only consider it in the light of Mr. Jenkins' testimony but not in evidence as to what the situation was on June 26th."

During the testimony of Abigail Clauter as to feeling pipes on the bottom of the pool on June 30th or July 2nd, the court said to the jury: "Again, ladies and gentlemen of the jury, you may consider this evidence with the limitation only that it can be used in connection with the testimony that you have received today from Mr. Carter Jenkins. It is not to be used in any way as any evidence as to what the situation or condition of the beach was on June 26th, 1964."

Robert Lee Sherman, Jr. testified that sometime after June 26, 1964, he returned to the beach with one of plaintiffs' attorneys, took him to the approximate spot where his brother was injured and found a metal object under the sand that felt like a pipe. On objection by defendant, the court instructed the jury: "Ladies and gentlemen of the jury, again, this testimony that you are about to receive is admissible and to be considered by you only in that limited sense that can be taken in consideration with the testimony of Mr. Carter Jenkins and, again, cannot be considered by you as to any evidence as to what the conditions or circumstances of the beach park were on June 26th, 1964."

Plaintiffs contend that the testimony showed changing conditions of cover over the pipe which tend to prove the allegation in the complaint that defendant "carelessly and negligently failed to install said pipe at sufficient depth to be safe for swimmers using said beach." De-

fendant argues that the testimony constitutes evidence of post occurrence conditions and was therefore, inadmissible, and that it cannot be circumstantial evidence of defendant's negligence as contended by plaintiffs, because circumstantial evidence will not support a theory of liability unless it is of such nature as to leave only one conclusion or inference to be drawn therefrom.

On the issues toward which the testimony above reviewed was directed, defendant adduced the testimony of two lifeguards who stated that the plaintiff, William F. Sherman, was injured at a point "between the shallow guard chair and the sliding board." The guard chair is situated approximately 20 feet south of the point where the reducer is installed, and the slide is approximately 60 feet south of the guard chair.

Three witnesses testified that they had walked along the place where the pipe was buried, or had searched for exposed places by partly submerging and exploring the area with their hands, and did not find any exposed places. Defendant's Chief Utilities Engineer testified that the pipe was laid at proper depth, and neither the pipe nor its cover had moved enough to expose it.

The evidence shows that there was no change made in the type or method of installation between the time of the occurrence and the time when the witnesses, both for plaintiffs, and defendant, examined the swimming area.

In People ex rel. Noren v. Dempsey, 10 Ill2d 288, 139 NE2d 780, at page 293, the Supreme Court said: "The basic principle that animates our law of evidence is that what is relevant is admissible. Exceptions to that principle must justify themselves." Our courts of review have approved the admission of evidence of a condition subsequent to an occurrence, to show the condition of a road bed and track, Jacksonville Southeastern Ry. Co. v. Southworth, 135 Ill 250, 25 NE 1093, an automobile, Morgan v. Mixon Motor Co., 10 Ill App2d 323, 137 NE2d

504, Gass v. Carducci, 37 Ill App2d 181, 185 NE2d 285, and a sidewalk, City of Bloomington v. Osterle, 139 Ill 120, 28 NE 1068. Neither defendant's evidence as to the method of installation, nor the testimony of the witnesses who failed to find any change precludes proof of a subsequent condition from which it could reasonably be inferred that there was a change in the condition of the cover over the pipe. In considering a situation wherein the weight of certain timbers was in issue, the District Court of the United States for the Southern District of Georgia, in Compania De Navegacion Transmar, S. A. v. Georgia Hardwood Lumber Co., 48 F Supp 402, at page 404, said: "The rule that a state once shown is presumed to continue is not without qualification and is not to be rigidly applied under all circumstances. Where likelihood of change is inherent in the thing itself, i. e., lumber or timbers, green or wet, exposed to the sun and air, whereby it dries and moisture evaporates, the inference of continuance does not arise. The more volatile the situation the less reliable is the presumption of the continuous state. Blocks of ice and blocks of granite weighing the same when the sun shines on them hot do not last equally as long."

The tendency of sand to move and shift is "inherent in the thing itself." The evidence shows that there are holes drilled in the pipe, water and chlorine are pumped through, resulting in sprays or jets, into the sand. This evidence, and the testimony of the witnesses concerning the exposure of portions of the pipe, were evidence from which the jury could have drawn the inference that the pipe was exposed at the time of plaintiff, William F. Sherman's injury. In Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847, at page 134, the Supreme Court said: ". . . reasonable inferences may be drawn from established facts and all that can be reasonably required to establish controverted facts, whether the evidence be direct or circumstantial, is that the

evidence creates a greater or less probability leading, on the whole, to a satisfactory conclusion." To paraphrase the statement of the District Court in its opinion in Compania De Navegacion, sand and gravel, when exposed to sprays and jets of water, will not react in the same manner as concrete.

█ The testimony was properly before the jury for whatever probative value the jury attributed to it, including its drawing therefrom the inference that the pipe was exposed, that the exposure resulted from the negligence charged in plaintiffs' complaint, and the negligence proximately caused plaintiff's injuries. The court improperly limited the purpose for which the jury might consider the evidence, and in so doing, committed error.

Plaintiffs contend that the court erred in excluding their Exhibits "A" and 23. Carter Jenkins identified and described Exhibit "A" as a cast-iron reducer, 14 inches in length, to which were connected a pipe with an internal diameter of 6 inches, and a pipe with an internal diameter of 4 inches, with half-inch holes drilled in each length of pipe. He stated that the "coupling here is as nearly identical to the one we found out there to be possible to assemble." The record shows that plaintiffs had issued a subpoena duces tecum directed to John H. Hunter, Commissioner of Public Property of the defendant, directing him to bring with him a portion of the chlorinating pipe described in the subpoena. Defendant moved to quash the subpoena on a number of grounds including "Defendant has heretofore answered Plaintiffs' interrogatories and has named the manufacturer of said pipe and described the make and design of the pipe. Plaintiffs can, through the exercise of discovery and subpoena powers, procure a similar pipe from the manufacturer." The court allowed defendant's motion.

Plaintiffs offered the exhibit in evidence and defendant objected on the grounds that the coupling and pipe had already been described, and would serve only to preju-

dice the jury, and there had been no evidence to connect the pipe or coupling in the lake bottom with plaintiff's injury.

■ Defendant argues that plaintiffs' post-trial motion did not set forth the alleged error with sufficient specificity to preserve it for review in that they merely asserted in their motion that the court "erred in refusing to admit plaintiffs' Exhibit A in evidence," without stating specifically the grounds upon which they rely, as required by section 68.1(2) of the Civil Practice Act. We have examined the cases upon which defendant relies and find no authority to support defendant's contention. In the cases cited, the post-trial motions contained the general allegation that the court erred in admitting or excluding evidence, without specifying which exhibit, or what testimony, the movant meant to include. Here plaintiffs specifically referred to the exhibit in question and the motion meets the requirements of section 68.1(2).

Defendant argues that the exhibit in demonstrative evidence, and its admission or rejection is discretionary with the trial court, and in the absence of evidence that plaintiff struck his head upon any exposed pipe, the exhibit was wholly immaterial.

Plaintiffs' Exhibit 23 is a drawing prepared by Carter Jenkins, and contains six diagrams. Three diagrams show the general physical appearance of the types of connections used in the chlorinating pipe, and three are cross-sectional views of the pipe, showing the manner in which bolts are inserted to pull the plain end of a length of pipe up against the flanged bell of the adjacent pipe, the lead and jute joints which the testimony shows were used in the installation to make the pipe watertight, and the type of joint used in the reducer, where the coupling is made of larger and smaller pipe. The diagrams are not to scale. There is a table which shows the sizes and dimensions indicated so that the cross-sectional views would

apply to the several sizes of pipe used, ranging from 8 inches to 3 inches in diameter.

In 20 American Jurisprudence at page 600, it is stated that: "It is always proper, when a fact in issue may be explained by the production of an article or object to which testimony relates, to bring such article or object into court and exhibit it to the jury; it may be said, in fact, that this should be done if the circumstances permit. Things may be exhibited to jurors in order that they may obtain clearer views and be able to reach sounder conclusions. This course is viewed as more effective than a description by the witnesses."

In III Wigmore (3rd ed), Professor Wigmore said, at page 173: "It would be folly to deny ourselves on the witness-stand those effective media of communication commonly employed at other times as a superior substitute for words." In Springer v. City of Chicago, 135 Ill 552 at page 561, 26 NE 514, the Supreme Court said: "It is a common practice in the trial of causes in the circuit court, to permit parties to produce things before the jury for their inspection, and that practice has been approved. Thus, in Tudor Iron Works v. Weber, 129 Ill 535, which was an action to recover for a personal injury, we held that the torn clothing which plaintiff was wearing when injured might properly be shown to the jury. In American Express Co. v. Spellman, 90 Ill 455, an action against a carrier for the loss of a can of yeast, it was held to be proper to allow plaintiff to put in evidence a can similar to the one in which the yeast was shipped, for the examination of the jury."

 Under the above cited authorities there is no question that the pipe and reducer installed in the swimming area, if relevant, would be admissible. Plaintiffs could not produce the pipe and reducer because the trial court quashed the subpoena duces tecum by means of which plaintiffs attempted to procure it for evidence. Defendant does not question the accuracy of the exhibit,

and under the circumstances, the admissibility of this exhibit is governed by the same rules as would apply to the reducer and pipe actually installed in the lake bottom. Contrary to defendant's contention, it was not necessary that plaintiffs prove that plaintiff actually struck the pipe to make the exhibit relevant; it was relevant as evidence of the conditions that existed. As to defendant's contention that the exhibit might prejudice the jury, since the exhibit is clearly illustrative of something which it was necessary for the jury to understand, and relevant to the issue of defendant's alleged negligence, the fact that it might be awesome, or gruesome, does not render it inadmissible. Smith v. Ohio Oil Co., 10 Ill App 2d 67, 134 NE2d 526. We hold, therefore, that the trial court erred in excluding plaintiffs' Exhibit "A."

█ The exclusion of the drawing (plaintiffs' Exhibit 23) presents a different situation. In 9 ALR2d at page 1044, is found an excellent annotation on the admissibility of drawings and diagrams. The majority rule, and the rule in Illinois, governing the admissibility of demonstrative evidence (in that case, a skeleton), is well stated in Smith v. Ohio Oil Co., 10 Ill App2d 67, 134 NE2d 526, in which opinion, at page 77, the Appellate Court said: "This court holds that the determination of relevancy and explanatory value of demonstrative evidence is primarily within the discretion of the trial court, but, to curtail abuses, is subject to review as to the actual use made of the object."

█ There is testimony in the record which describes what the drawing was intended to demonstrate. Although the exhibit might have been of value in explaining to the jury how the lengths of pipe were connected, and how the reducer couplings were made, and there is no question that the evidence is relevant, we hold that either its admission or exclusion, in view of the evidence of record, would be held to be within the discretion of the trial court. In this instance, we hold that

its exclusion was not such abuse of discretion as to be error.

Plaintiffs assert that the trial court erred in permitting Hugh O'Brien, Chief Utilities Accountant for the City Water, Light and Power Department of the defendant, to testify that the beach and swimming facilities were operated at a loss.

 The record shows that the testimony was admitted without objection. Plaintiffs' motion to strike all of the testimony of this witness was properly denied because some of his testimony was admissible, and as said by the Appellate Court for the First District, in Balfour v. Dohrn Transfer Co., 328 Ill App 163, 65 NE2d 624, at page 167, "The trial court could not be expected to sort the evidence, striking those items that were objectionable."

 Because we reverse the judgment here, and remand the cause for a new trial, we point out that the testimony was irrelevant, and its admission, if the point were properly preserved, would be held to be error.

Plaintiffs next contend that the court erred in permitting Lee Nickelson, Chief Utilities Engineer for the defendant, to express an opinion with reference to the pipe installed in the beach area. Nickelson was called by plaintiffs for examination under section 60 of the Civil Practice Act. He testified that James McKee, and the crew who worked under McKee's direction, were employed under the witness' jurisdiction as Chief Utilities Engineer. He stated that no plans or specifications were drawn for the installation of the chlorination pipe, that McKee was responsible for the laying of the pipe, that he had never seen it, and had not at any time gone out to look at the job.

He was called by defendant in its case, and testified that there were no plans or specifications for the job because it was considered to be a maintenance job, a repair of an existing pipe, and not a new installation. He

was asked whether he had reason to believe that the chlorinating pipe would have had reason to change its position, and answered that in his opinion, the pipe has not moved. Plaintiffs' counsel objected to the question and answer, the objection was overruled as "not timely," and the witness stated that in his opinion "this pipe has not moved since it was installed."

We have previously discussed the rule enunciated in Wigmore, and followed in a number of Illinois cases, that where an expert is possessed of knowledge based on personal observation, no hypothetical presentation is necessary, that where personal observation is lacking, a hypothetical presentation must be used, and an expert may base his opinion on personal observation, a hypothetical presentation, or a combination of both.

In this situation the witness, admittedly, had no knowledge based on personal observation, and he should not have been permitted, without a hypothetical question, to express the opinion that the pipe had not moved. Because plaintiffs failed to move to strike the question and answer subsequent to the overruling of their objection, we would not ordinarily consider this charge of error. However, since the case is remanded for a new trial, we point out the rules applicable to the expression of expert opinions.

Mr. Nickelson was also permitted to state that in his opinion, the freezing and thawing of the chlorination pipe would have no effect upon it. It is obvious from the testimony, and the questions by which it was elicited, that his opinion that the pipe would not be affected by freezing, was based on the fact that the pipe, because of the holes bored in it, would not retain water, and thus would not suffer the damage ordinarily resulting when water freezes in a cast-iron pipe. Under the state of this record this was not an opinion based on expertise, and

214

was an irrelevant, innocuous statement of a fact that since the pipe could not retain water, it would not be damaged by freezing.

Defendant argues that the testimony of this witness with respect to the effect upon the pipe of its freezing and thawing, was relevant, and was made admissible by reason of the fact that Carter Jenkins testified that freezing and thawing would cause movement of the pipe. This assertion is not borne out by the record. Mr. Jenkins, in explanation of his answer to the hypothetical question, said: "The pipe that was theoretically laid was placed during the cold weather. It was subject to—immediately upon construction—to all the forces that nature can bring to bear on it including the heaving of the frost, the action of storms that occurred during that winter season, the later inundation of the area by water, the action of the waves over the top of the fill over the pipe which would cause it to move either in or out of longitudinally, the action of the bathing feet in the vicinity of the chlorinating or feed line pipe and the contraction and expansion that would be created in the pipe itself by changes in temperatures. All of that would cause movement of the pipe."

We next consider plaintiffs' contentions with respect to certain instructions for defendant. Over plaintiffs' objections, the court gave the following instructions:

## DEFENDANT'S INSTRUCTION NO. 11

"The fact that you have received instructions as to the measure of damages in this case, or that counsel in their arguments have discussed the question of damages, raises no presumption that you should assess any damages against the defendant, but before any damages can rightfully be assessed against the defendant, the burden is upon the plain-

tiff to prove his right to damages from the defendant by the preponderance or greater weight of all the evidence in this case."

DEFENDANT'S INSTRUCTION NO. 12

"There is no presumption of negligence against the defendant from the fact in and of itself that the plaintiff may have received some injury or damage while on the premises of the defendant."

DEFENDANT'S INSTRUCTION NO. 13

"If you find and believe from the evidence that the defendant was negligent, but you also find and believe from the evidence that the plaintiff was likewise negligent, and that the negligence of both the plaintiff and the defendant contributed to the injuries of the plaintiff, then and under those circumstances the plaintiff cannot recover."

Supreme Court Rule 25–1 provides, in part,

"Whenever Illinois Pattern Jury Instructions (IPI) contains an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction shall be used, unless the court determines that it does not accurately state the law."

 IPI instruction 21.07 clearly, concisely, and adequately, covers the subject matter of defendant's instruction No. 11. If defendant desired an instruction on this matter, the instruction should have been tendered in the form set out in IPI.

 Instructions were given in the form of IPI 20.01 and 21.02. These instructions adequately cover the sub-

216

ject matter of defendant's instructions No. 12 and 13, and these instructions should not have been given.

We do not disagree with defendant's contention that IPI does not cover all situations, and there are instances when an instruction not therein contained should be given. This contingency is provided for in Rule 25–1 which provides:

"Whenever IPI does not contain an instruction on the subject on which the court determines that the jury should be instructed, the instruction given on that subject should be simple, brief, impartial and free from argument."

We do not discuss the cases cited by defendant in support of its argument that the giving of these instructions is not error, other than to point out that all of them were decided prior to the adoption of Supreme Court Rule 25–1.

In the course of instructing the jury, while reading defendant's instruction No. 1, given in the form of IPI 1.01, the court, between 1.01(7) and 1.01(8), interpolated the following oral instruction: "I will call your attention to the fact that on two or three days of this trial at the various situations, ladies and gentlemen of the jury, I admitted certain evidence but to be considered only in conjunction with the testimony of one witness and not to be considered as any evidence as to what the situation was on the date in question, June 26th, 1964. And, again, I would refresh you on the admonishment that the Court gave you at that time."

■■ ■■ The problems which arise with respect to the admission of evidence, admissible for one purpose, but inadmissible in some other capacity, are discussed in Volume I, Wigmore on Evidence (3rd edition) at page 300. When such limitation is necessary, the jury should be so advised, simply and concisely, without repetition or argument. Such admonition, coupled with an instruction

in the form of IPI 1.01(7): "Whenever evidence was received for a limited purpose, . . . you should not consider it for any other purpose . . .", is adequate. Anything more might well tend to confuse the jury as to the proper consideration of the evidence, or influence it to disregard it in its entirety. As to the impropriety of the oral interpolation while instructing the jury, under the provisions of section 67(1) of the Civil Practice Act, the court in so doing, committed error.

Plaintiffs complain of a number of errors allegedly induced by conduct of defense counsel. We do not discuss these for the reason that, for the most part, they arise out of strenuous, and on occasion, heated, disputes on the admissibility of evidence, and are not likely to recur in another trial.

With regard to plaintiffs' contentions with regard to the trial court's rulings on certain discovery procedures, we consider the opinion recently handed down in Monier v. Chamberlain (Supreme Court No. 39799), and the cases therein discussed, sufficient guidance for the trial court to correct any alleged errors, and avoid new ones.

We have examined the allegations of negligence which were stricken by the trial court at the close of plaintiffs' case, and although we do not deem it necessary to discuss them individually, we are of the opinion that the evidence adduced by plaintiffs made a prima facie case with respect to several of them. In the event of retrial, plaintiffs' complaint is to be considered as containing the charges of negligence alleged therein, and is not to be treated as containing the single allegation of negligence which was not stricken by the trial court.

For the reasons herein set forth, the judgment of the Circuit Court of Sangamon County is reversed, and the cause is remanded for a new trial.

Judgment reversed and cause remanded for new trial.

EBERSPACHER and MORAN, JJ., concur.