Bernice Christianson, Plaintiff-Appellee, v. City of Chicago Heights, a Municipal Corporation, Defendant-Appellant.

Gen. No. 52,513.

First District, First Division.

December 16, 1968.

Scariano and Gubbins, of Chicago, for appellant.

Philip E. Ryan and Gerald J. Shine, of Chicago (Mary M. Shaw, of counsel), for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

This was a suit for personal injuries filed by the plaintiff, Mrs. Bernice Christianson, against defendant, the City of Chicago Heights, a municipal corporation, to recover damages for the injuries occasioned by the alleged negligence of the defendant in maintaining a public sidewalk within its corporate boundaries. A verdict in favor of Mrs. Christianson and an assessment of damages of $22,500 were rendered by the jury, whereupon the court entered the judgment from which this appeal is taken. No questions are raised on the pleadings.

On August 3, 1962, Mrs. Bernice Christianson, 59 years old, was sent by her employer to purchase certain office supplies from Cook's office supply store located in Chicago Heights, Illinois. Following her purchase, as she was returning to her automobile, the right heel of her shoe slid off a depression in the public sidewalk, in front of the store, and she fell to the ground. As she went down she heard a cracking sound, and immediately after her downward motion ceased, she found herself sitting on her left leg, her left knee bleeding, and felt sharp pain in her right ankle. The sidewalk upon which Mrs. Christianson fell contained a rise and depression between the slabs of concrete of approximately two to two and a half inches. She was taken to St. James Hospital in Chicago Heights, by two employees of Cook's, where her left knee, which was still bleeding slightly, was washed and bandaged. The treating physician recorded no further treatment of the left knee while she was in the hospital. The physician examined the right ankle and ordered it packed in ice. The next morning the ankle was X-rayed, and the following day a cast applied. The X ray of the right ankle revealed a fracture of the medial malleolus, with no sprains or displacement of fractured fragments. Mrs. Christianson spent two days at the hospital and the following three months at

home in a wheelchair. On September 25, 1962, approximately seven weeks after the fall, the cast was removed and X rays were taken of the ankle. These X rays revealed the fracture was hardly visible, yet she was still dependent upon the wheelchair until the first week of November when she attempted to walk.

With respect to Mrs. Christianson's left knee, on December 15, 1962, she complained to her physician of pain which she had felt for approximately six weeks, yet an X ray taken at this time was recorded as showing a satisfactory condition of the knee with no unusual symptoms and no fracture or dislocation. As a child, Mrs. Christianson was afflicted with polio, causing a four-inch shortening of her left leg, a left pelvic tilt and curvature of the spine, and, as she testified concerning this condition, "I have always had it. It has always been with me that I remember." In November, 1963, another doctor examined the left knee and he testified at the trial that there was a permanent displacement of the left patella (left kneecap) due to a ruptured quadriceps tendon, so that the kneecap was not pulled or held up in its normal position. Plaintiff testified this condition "has never gotten any worse or any better; it is with me." Mrs. Christianson did not visit her physician again because of the left knee until April 16, 1965, when she sustained a fall while obtaining the mail from her front yard mailbox. As she was walking to the mailbox, her left leg "just gave out," and she fell upon the pavement. The doctor came to her home and recommended an X ray be taken immediately. An X ray showed no fracture, but the left knee was swelled up considerably and there were abrasions and a blood clot on the surface of the knee.

At the trial, the plaintiff introduced evidence as to the circumstances of the fall, the condition of the sidewalk, and the damages sustained by her; she also introduced evidence pertaining to the second fall in April of 1965. Mrs. Christianson testified that after removal of the cast,

she has required a cane to assist her in walking, and that since the injury she has not been able to get around as she once was able. At the time of the trial, February, 1967, she was still using a cane.

Mr. Christianson testified that following the fall of August 3, 1962, plaintiff, his wife, was no longer able to perform the duties and functions of a housewife in maintaining their home. The defendant's only witness was a doctor who had not examined the plaintiff's injuries but who answered hypothetical questions as to her condition. The jury was instructed that the plaintiff had the burden of proving due care on her part, negligence on the part of the defendant, that the plaintiff was injured, and that the defendant's negligence was the proximate cause of the injury. Thus instructed, the jury returned a verdict for the plaintiff and assessed damages in the amount of $22,500. Defendant's post-trial motion for arrest of judgment, judgment notwithstanding the verdict, or, in the alternative, for a new trial was denied.

On appeal the defendant, Chicago Heights, maintains that (1) the trial court ruled incorrectly on certain objections to the evidence; (2) certain remarks of the trial court were prejudicial to defendant; (3) the jury was improperly instructed; and (4) the damages awarded were excessive. However, in this court defendant does not press the issues as to its negligence or the plaintiff's contributory negligence as raised in its post-trial motion.

It is defendant's contention that evidence with respect to a subsequent fall by Mrs. Christianson at her home two and a half years after the fall in question was irrelevant, immaterial and erroneously admitted into evidence over defendant's objection. Defendant stresses there was no connection shown between the two falls and nothing was shown to prove the proposition that the subsequent fall was caused by an alleged injury to the left knee sustained in the first fall. When the first men-

tion of the second fall arose, the trial judge held a conference in chambers with both counsel wherein plaintiff's counsel indicated he would present medical testimony of the doctor who examined Mrs. Christianson between the time of the first fall and the second fall and who would testify as to a condition in the left knee that showed a weakness due to the injury sustained in the first fall. Since the jury heard mention of a second fall, the court proposed to both counsel that the court would instruct the jury to disregard the testimony concerning the second fall of April, 1965, at this point, and as other witnesses appeared, such second fall may or may not be established and connected to the first fall. The proceedings resumed and the court so instructed the jury.

Medical testimony of Dr. Bonick, relating to the subsequent fall, was that he examined plaintiff's left knee after the fall and it was his opinion that there was a strain or sprain of the ligaments around the left knee. Previously Dr. Petty had testified that his examination of Mrs. Christianson's left knee in November, 1963, revealed a permanent displacement of the left quadriceps tendon. He also testified this condition produces a laxness in the knees and an instability of the knee so that a person so affected would be more susceptible to falling or turning his knee. Finally, Mrs. Christianson testified to the fall she sustained on April 16, 1965.

■■■■ Whether the cause of the second fall was a result of the injury sustained in the fall upon the defendant's public sidewalk was a question of fact for the jury to resolve according to the evidence presented. There is evidence in the record to indicate the plaintiff fell, due to a sudden giving out of her left knee, which could be inferred as occurring as a residual effect of the injury sustained in the fall of August 3, 1962. The jury was at liberty to draw an inference from that evidence that the injury to the left knee sustained in the first fall was

321

the cause of Mrs. Christianson's second fall on April 16, 1965, or the jury could totally disregard such evidence in assessing defendant's liability and the resulting damages. Such evidence adduced by plaintiff, being relevant and material to the existing condition of plaintiff's left knee and defendant's liability, was, therefore, properly admitted, and the jury's judgment as to its connection with the initial fall was final.

■ Defendant complains of the trial court's overruling of his objection to the hypothetical questions asked a physician by plaintiff's counsel, based upon the court's assistance to plaintiff's counsel in formulating such question. The familiar rule concerning hypothetical questions is that where an expert witness is asked a hypothetical question and the facts are not disputed, the question must contain all the material facts or the opinion is likely to mislead the jury. Such question also must not ignore material facts which affect the opinion given. Wolczek v. Public Service Co. of Northern Illinois, 342 Ill 482, 174 NE 577 (1931) ; Peterson v. Cochran & McCluer Co., 308 Ill App 348, 31 NE2d 825 (1941).

■ ■ It is our view that the trial court did not assist plaintiff's counsel in amending his hypothetical question by supplying any missing material facts. Although the court admitted the hypothetical question posed by plaintiff's counsel was "not as thorough as it should be," the court's mention of the absence of the date of the accident, that the doctor examined the hypothetical person over a year later, and the court's permission to counsel to incorporate into the hypothetical question such facts, did not mislead the jury or prejudice the defendant's cause. The jurors were quite well aware of the date of the first fall, and were cognizant that the physical examination of the plaintiff by this doctor was in November 1963. While the original hypothetical question varied slightly from the actual facts, but not materially, in its amended form such question was proper

and contained, we believe, the material facts upon which the answer was based.

■ The defendant argues that certain remarks of the trial court were improper and prejudicial to his cause. The trial court, in its opening statement to the jury, commented that the sidewalk upon which Mrs. Christianson fell was repaired the day after the fall. While evidence of repairs made to an instrumentality after an injury has occurred is inadmissible to show negligence of the party in control of such instrumentality when the injury occurred, Devine v. Johnson & Jennings Co., 189 Ill App 556 (1915); Day v. Barber-Coleman Co., 10 Ill App2d 494, 135 NE2d 231 (1956), in the instant case, we note that such comment by the trial judge was not intended to be introduced as evidence, and when brought to his attention at a conference in chambers by counsel, the trial judge made the following statement to the jury:

". . . I do want to make this statement. After a conference in chambers, it developed that in my opening statement about the facts of this case, I remembered saying that the sidewalk in question was repaired the next day. You are to absolutely disregard that, even as you would disregard any statements by attorneys, which is not evidence. There will be no evidence allowed in the case whether or not the sidewalk was repaired after. So, please disregard it entirely. Thank you."

Mr. Pappas: "Your Honor, as you are aware, of course, I made an objection."

The Court: "I overruled the objection, yes. The motion was to withdraw a juror and start the trial over, and I don't think it's necessary at all."

■ It is our considered opinion that the trial court's admonition to the jury was an adequate precaution to remove any prejudicial impressions in the minds

of the jury so that the jury would not be misled or influenced into considering such repairs as evidence against the defendant, and that the effect of the remarks by the trial court to the jury were cured by his instructions to disregard them. Sherman v. City of Springfield, 77 Ill App2d 195, 222 NE2d 62 (1967). Nor do we believe the jury was prejudiced against defendant by the remarks of the trial court in the presence of the jury concerning defendant's motion for withdrawal of a juror and the declaration of a mistrial, or by the later mention by the trial court of the nonapplicability of a case in point in the presence of the jury when overruling an objection by defendant to the admission of certain evidence. We do not consider these minor matters as substantial errors which would require a new trial.

 Defendant next asserts that there was error in instructing the jury. Initially there is the objection that the jury was given copies of the instructions which indicated who tendered such instructions rather than the originals of such instructions which do not recite who tendered them. The original instructions, which unlike the copies do not show the identity of the party tendering them, are to be taken by the jury into the jury room, pursuant to sections 67(1) and 67(2) of the Civil Practice Act, Ill Rev Stats 1967, c 110, §§ 67(1), 67(2), which provide in part:

> "§ 67(1) . . . An original and one copy of each instruction asked by any party shall be tendered to the court. The copies shall be numbered and shall indicate who tendered them. . . .

> "(2) The original written instruction given by the court to the jury shall be taken by the jury to the jury room, and shall be returned by them with their verdict into court. . . ."

In addition, defendant maintains that the designation on the copies received by the jury of the party tendering the

instructions misled and confused the jury, thereby prohibiting a fair and impartial verdict, and the court erred in allowing the jury to receive these copies instead of the original instructions as required by the statute. The plaintiff asserts that the record does not show by whom the instructions were tendered, and strenuously argues that an essential prerequisite to the raising of an issue on the instructions given to the jury, is that the record shows by whom the instructions were actually tendered, and therefore any claim of error cannot be considered. The record reveals the following concerning the matter:

Mr. Pappas: "Judge, I am going to make a motion at this time. I have here a copy of the instructions, and for some reason or other, the jury got a copy of marked instructions. I, therefore, request a mistrial in this case."

The Court: "Got any law on the subject? I don't know why they got them. I didn't hand it to them."

Mr. Pappas: "I couldn't have handed it to them, Judge."

The Court: "I handed them the ones"—

Mr. Pappas: "You got a set of unmarked instructions right there. Judge."

The Court: "I know it."

Mr. Pappas: "That was in the set that was in the file that went in the jury room. I can get you some law, Judge. If you want to reserve some ruling, that's up to you."

Mr. Ryan: "Counsel has no evidence at all that these instructions were the specific instructions. As the Court just said, he handed the instructions."

The Court: "How those got in there, I have no way of knowing."

Mr. Pappas: "Those instructions were in your book, Your Honor. These instructions were in the file. You want to poll the jury on that?"

Mr. Ryan: "The jury was properly instructed."

The Court: "All I want to know, do any of you have any cases on marked instructions?"

Mr. Pappas: "Not right off hand, but I can get you some. Do you want to reserve your ruling?"

The Court: "Certainly I do. I want to look up the law on it."

Mr. Pappas: "We can poll the jury, instead of holding up the jury. You want to reserve the ruling on that?"

The Court: "Yes. Ask the jury to come out please."

Mr. Pappas: "If you want to poll them to see if these were the instructions they received, I have no objection."

The Court: "I don't know whose handwriting is on the top of this. That isn't mine."

Mr. Pappas: "That isn't mine. It probably was the clerk's. That's the set that was downstairs, because they're stamped. On the back."

Mr. Ryan: "There's an extra set of instructions that goes with the file."

The Court: "The point is that I want to check the law on it."

■■■■■■ There is nothing in the record to corroborate the assertion that the jury was in fact given copies of the marked instructions, or that the instructions were confusing or misleading to the jury. We also note that no

factual basis exists to ascertain from the record before us whether or not marked copies of the instructions were actually delivered to the jury or whether the jury actually did have possession of such marked copies of the instructions. While it appears that the question was raised by defendant's counsel on the morning following the end of the trial, when the sealed verdict was being opened, there is some confusion as to just what happened. After the jury was polled, nothing was said concerning the instructions they had received or whether they had been misled or confused, nor did defendant's counsel inquire further into the matter. Where there is no fraud, deception or deliberate harm shown as to the tendering to the jury of instructions, no reversible error has occurred, and the application of the harmless error doctrine is favored when it appears that the rights of the complaining party have in no way been prejudiced. Cohn v. Petroleum Heat & Power Co., 44 Ill App2d 23, 194 NE2d 29 (1963); Kaptain v. Overgaard, 19 Ill App2d 483, 154 NE2d 105 (1959).

 Defendant contends also that the trial court erred in giving Plaintiff's Instruction Number 3 since it is not a concise statement of the ultimate issues involved, but rather a statement of allegations and denials in the complaint and answer of both parties. We have reviewed Plaintiff's Instruction Number 3, and find that it follows that form as recommended by Illinois Pattern Jury Instructions No. 20.02, is not prejudicial against defendant's case, does not compare with the instruction disapproved in Hammer v. Slive, 27 Ill App2d 196, 169 NE2d 400 (1960), and the trial court did not commit error in giving it.

 We arrive next to defendant's contention that the damages awarded in this case were excessive. While damages cannot be determined with mathematical certainty, each case must be determined according to its

own circumstances, and that the trial judge and jury are best able to determine that sum which will fairly compensate an injured plaintiff entitled to a verdict. Rogers v. Gehrke, 77 Ill App2d 343, 222 NE2d 351 (1966). As a result of the fall, Mrs. Christianson sustained the aforementioned injuries to her right ankle and her left knee. She spent three months confined to a wheelchair and presently requires the aid of a cane to assist her in walking. Medical testimony recited that the injury to the left knee was permanent in nature in the absence of further surgery. After her period of convalescence, Mrs. Christianson was unable to pursue her former occupation, a bookkeeper, was only able to perform part-time employment as a nurse, and her ability to perform normal household duties was curtailed. We do not believe that the damages awarded are out of proportion to the injury and loss, nor are they excessive as to shock judicial conscience.

On the basis of the record before us, we must conclude that the rulings of the trial court did not constitute reversible error and should be affirmed. The judgment of the Circuit Court of Cook County is therefore affirmed.

Judgment affirmed.

BURMAN, P. J. and MURPHY, J., concur.